[Cite as *In re H.C.*, 2026-Ohio-3058.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| H.C. | : | CASE NO. CA2026-03-007 |
| | : | <u>OPINION AND</u><br><u>JUDGMENT ENTRY</u><br>8/10/2026 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20253087

Karen Oakley, for appellant.

Zachary A. Corbin, Brown County Prosecuting Attorney, and Robert F. Benintendi, Assistant Prosecuting Attorney, for appellee.

Lisa A. Rothwell, for Father.

Kaylyn Harris, guardian ad litem.

Rachel V. Triplett, guardian ad litem.

## **O P I N I O N**

**SIEBERT, J.**

{¶ 1}  Mother appeals the judgment of the Brown County Juvenile Court granting custody of her child, Jane,[1] to the Brown County Department of Job and Family Services (the "Agency"). On appeal, Mother argues the trial court's decision was in error because (1) the Agency did not file a motion before amending her case plan and (2) the trial court did not engage in the appropriate analysis of relevant statutory factors before granting the Agency custody.[2] We overrule these assignments of error. There is no indication in the record that Mother's case plan was actually terminated until the court granted permanent custody to the Agency. In addition, Mother did not request written findings of fact and conclusions of law to make the court lay out its reasoning in more detail.

## Background

{¶ 2}  Prior to the underlying proceedings, two of Mother's children (and half-siblings of Jane), were placed in permanent custody of the Agency due to a lack of stable housing and neglecting to take the children to necessary medical appointments. Mother later gave birth to Jane in April of 2025. Jane spent significant time in the ICU due to being born prematurely. After being discharged, Mother lived at a substance abuse treatment facility and later a domestic violence shelter. According to Mother, she had no substance abuse or domestic violence issues at the time but was allowed to stay there due to her prior history. The Agency identified no substance abuse or domestic violence concerns during the underlying proceedings. Mother's unstable living conditions prompted her to place Jane in the care of a 17-year-old friend in Brown County.

---

1. "Jane" is a pseudonym adopted for this opinion for the purposes of privacy and readability. *In re D.P.*, 2022-Ohio-4553, ¶ 1, fn. 1 (12th Dist.).

2. Mother makes arguments on behalf of Jane's father within this appeal. However, there is no indication in the record that Mother's counsel also represents Father or that Father has separately appealed in this case. We therefore limit our analysis solely to the raised assignments of error as they apply to Mother.

{¶ 3} In August 2025, the Agency filed a complaint alleging Jane was a dependent child. Among other things, the Agency alleged that Mother refused to sign consent forms for her friend to obtain treatment for Jane. Within the complaint, the Agency requested a dispositional order granting it permanent custody of Jane. The trial court granted the Agency temporary custody, finding that although the Agency had not made reasonable efforts to prevent Jane's removal from Mother's home, "exigent circumstances" made it necessary to protect Jane and her interests. The Agency placed Jane in the same foster home as her siblings. At an adjudicatory hearing in September of 2025, Mother stipulated to Jane being a dependent child. The trial court found that the Agency made reasonable efforts to prevent removal of Jane from Mother.

{¶ 4} Although the Agency originally placed Mother on a case plan, the Agency submitted an amended case plan in December of 2025 seeking to remove Mother from case plan services. The Agency asserted delays in establishing Jane's paternity led to Mother being placed on a case plan, but the prior termination of Mother's parental rights of Jane's siblings and Mother's continued unstable housing were also reasons the Agency sought to remove Mother from the case plan. Mother filed objections to this amended case plan and requested a hearing.

{¶ 5} Mother's objections and permanent custody of Jane were heard on the same day in February 2026. At the hearing, a case worker from the Agency testified that given the termination of Mother's parental rights to Jane's two siblings due to medical neglect, the Agency had concerns about Mother taking Jane (who was born premature) to medical appointments. Mother had only been able to make 4 of her previous 8 visits with Jane. The caseworker also testified that Jane was bonded with her foster family, which included her siblings. Jane had grown especially bonded with one of her siblings. Jane's guardian ad litem, who also served as the guardian ad litem for Jane's siblings,

also testified at the hearing that she believed granting permanent custody to the Agency was in Jane's best interests.

{¶ 6} Mother testified that during the proceedings below, she moved to Canton, Ohio, where she now rents a two-bedroom apartment. Her income during this time mostly depended on food delivery, which she accomplished via bicycle or a friend driving her. However, Mother obtained employment with Dollar Tree, and her starting date was the day after the hearing. Mother stated that she utilized a local help network on Facebook to meet much of her day-to-day transportation needs, including getting to appointments. Mother testified that she missed visitation with Jane on several occasions because Mother had medical appointments due to complications from Jane's birth.

{¶ 7} The juvenile court granted the Agency's motion for permanent custody. Via a form order with checklists, the trial court found clear and convincing evidence established, among other things, that Jane could not be placed with Mother within a reasonable time, and that it was in Jane's best interest for permanent custody to be granted to the Agency. The order further indicated that the Agency provided reasonable efforts to prevent Jane's removal from her home and to make it possible for her and Mother to reunite by, among other things, granting Mother visitation with Jane. However, the court's order also noted that Mother's parental rights to Jane's half-siblings had previously been terminated. In a limited discussion on the evidence presented in the case, the court noted that although mother "made strides in recent weeks to improve her personal life . . . [t]he concerns outlined in the prior removal largely remain the same."

{¶ 8} Ultimately, citing Jane's need for "stability and proper care", the court concluded giving custody to the Agency was "the only reasonable outcome." The court further stated, "Mother's Objection to the amended case plan and Motion for Hearing . . . is hereby moot." Mother did not request the trial court to file written findings of fact and

- 4 -

conclusions of law.

{¶ 9} Mother now appeals.

**First Assignment of Error**

{¶ 10} In her first assignment of error, Mother argues the Agency improperly terminated its provision of reasonable efforts to reunify her with Jane without first petitioning the court. Mother also asserts the four months between the Agency's filing of the complaint and its amendment of the case plan (a span of four months) cannot be deemed "a reasonable amount of time to give parents to remedy the conditions that caused" Jane's removal.

{¶ 11} Generally speaking, the Agency is required to make "reasonable efforts to prevent the removal of [a] child from the child's home," and to ultimately return the child home. R.C. 2151.419(A)(1). However, there are various exceptions to this. *Id.* at (A)(2). For example, if the child's parent previously "had parental rights involuntarily terminated with respect to a sibling of the child", the juvenile court "shall make a determination that the [A]gency is not required" to make such efforts. *Id*. at (A)(2)(e).

{¶ 12} Here, there is no dispute that Mother previously lost parental rights to two of Jane's siblings. However, the trial court never made a finding that the Agency therefore had no obligation to extend reasonable effort. Nonetheless, the Agency put Mother on a case plan and provided her with visitation hours to see Jane. Though the Agency filed an amendment to Mother's case plan in December of 2025, there is no indication in the record that the case plan and Mother's visitation with Jane were terminated until the court's February 2026 decision granting the Agency permanent custody and finding Mother's objections to the amended case plan moot. Thus, even if we were to assume an error occurred, we see no harm or prejudice to Mother.

{¶ 13} Mother's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 14} In her second assignment of error, Mother argues the trial court's judgment should be overturned because it "does not have any analysis" and "simply checks" the relevant findings on a form order. Mother also asserts that the testimony provided by the Agency in support of granting it permanent custody was vague and inconclusive. In the end, Mother complains that the court's "entry does not address any of the testimony in its analysis, [or] . . . review the factors to be considered it its determination."

*Applicable Law and Standard of Review*

{¶ 15} In original disposition proceedings where the Agency immediately requests it be granted permanent custody, "the juvenile court must: (1) determine that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent . . . and (2) determine that permanent custody is in the best interest of the child." *In re S.H.*, 2020-Ohio-3499, ¶ 18 (12th Dist.).

{¶ 16} Courts determine whether or not a child can or cannot be placed with a parent within a reasonable time by considering various factors laid out by statute. *See* R.C. 2151.414(E). "If the court determines, by clear and convincing evidence . . . that one or more" of these factors exist, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." *Id.* One such factor relevant to this case is whether "[t]he parent has had parental rights involuntarily terminated with respect to a sibling of the child" in prior proceedings. *Id.* at (E)(11).

{¶ 17} To determine a child's best interests, courts must consider:

> (a) "The interaction and interrelationship of the child with the child's parents, siblings . . . foster caregivers," and others;
>
> (b) "The wishes of the child, as expressed directly by the child or through the child's guardian ad litem";

- 6 -

(c) "The custodial history of the child,"

(d) "The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;"

(e) the existence of one or more of factors demonstrating a child cannot be placed with a parent within a reasonable time, *including prior termination of parental rights as to a sibling of the child*.

(f) any other factor the court deems relevant.

*See* R.C. 2151.414(D)(1)(a)-(e); R.C. 2151.414(E)(7)-(11); *In re A.J.*, 2019-Ohio-593, ¶ 24 (12th Dist.).

{¶ 18} "An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination." *In re A.S.*, 2019-Ohio-4127, ¶ 19 (12th Dist.). However, "[e]ven if there is sufficient evidence to support the juvenile court's decision, an appellate court may nevertheless reverse a permanent custody judgment if it finds the judgment to be against the manifest weight of the evidence." *In re G.A.*, 2023-Ohio-643, ¶ 18 (12th Dist.).

{¶ 19} To determine whether a juvenile court's judgment is against the manifest weight of the evidence, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re S.M.*, 2019-Ohio-198, ¶ 16 (12th Dist.), quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. The presumption in weighing the evidence favors the finder of fact, which we are especially mindful of in custody cases. *In re R.K.*, 2021-Ohio-3074, ¶ 15 (12th Dist.).

Therefore, if the evidence is susceptible to more than one construction, the reviewing court is bound to give it the interpretation that is consistent with the trial court's judgment. *In re D.S.*, 2022-Ohio-998, ¶ 63 (12th Dist.).

*Analysis*

{¶ 20} Mother's second assignment of error may very well have been sustained if not for one important fact—we see no indication in the record that Mother requested the juvenile court issue written findings of fact and conclusions of law regarding its permanent custody determination. Under Ohio statute, "If the court grants permanent custody [via original disposition], the court, *upon the request of any party*, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding." (Emphasis added) R.C. 2151.353(A)(4), R.C. 2151.414(D)(1), (E).

{¶ 21} Unless such a request is made, the juvenile court is not required to lay out its findings of fact and conclusions of law. *See In re Templeton*, 2001-Ohio-4219, *4 (12th Dist.) ("A trial court does not have to set forth the specific factual findings that correlate to the factors in R.C. 2151.414(D) unless a party requests findings of fact and conclusions of law"). *See also In re C.S.*, 2015-Ohio-4883, ¶ 29 (4th Dist.) ("The failure to request findings of fact and conclusions of law ordinarily results in a waiver of the right to challenge the trial court's lack of an explicit finding concerning an issue"); *In re P.A.R.*, 2019-Ohio-1446, ¶ 39 (8th Dist.); Civ.R. 52 ("When questions of fact are tried by a court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise . . . in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law").

{¶ 22} Here, the juvenile court's order concluded that Jane could not be placed with Mother within a reasonable time—because Mother previously had parental rights terminated to Jane's siblings—and that it was in Jane's best interest for custody to be

- 8 -

granted to the Agency. That is all the law required *unless* Mother requested findings of fact and conclusions of law to be written by the court. However, Mother made no such request.

{¶ 23} We therefore overrule this assignment of error.

**Conclusion**

{¶ 24} This court has observed countless times that parents have a fundamental (but not unlimited) right to raise their children and that this right is protected by both the United States and Ohio Constitutions. *See e.g. In re J.L.S.*, 2026-Ohio-1312, ¶ 15-18 (12th Dist.). Ohio law seeks to protect both the interests of parents and children through various statutory requirements and legal standards that must be satisfied before a court may grant permanent custody of a child to the Agency. *Id*. The prior termination of Mother's parental rights to Jane's siblings severely influenced Mother's ability to regain custody of Jane as well as the Agency's obligation to provide reasonable efforts to that end.

{¶ 25} Though we affirm the trial court's judgment granting permanent custody of Jane to the Agency, we observe that the ideals and statutes governing permanent custody proceedings "are not mere legal boilerplate or window dressing. Fundamental parental rights are real, and they are critical to maintaining the family as what it is: the fundamental, and most important, building block of any healthy society." *In re B.T.*, 2025-Ohio-3019, ¶ 80, 82 (12th Dist.) (Byrne, P.J. concurring separately). Therefore, it is important to remember that "the law does not permit the courts to terminate parental rights merely because parents make [or made] poor choices." *Id.* at 82. "[T]he permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case." *In re S.F.T.*, 2010-Ohio-3706, ¶ 10 (12th Dist.). As a result, all involved in permanent custody cases "should always strive to create a detailed and

thorough record that protects [and explains] the rights of those involved." *In re A.Y.*, 2025-Ohio-4316, ¶ 33, fn. 3 (12th Dist.).

{¶ 26} Judgment affirmed.

PIPER, P.J., and M. POWELL, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Brown County Court of Common Pleas, Juvenile Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robin N. Piper, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*

- 10 -